**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| ROBERT A. WILKIE,<br>                Plaintiff,<br><br>v.<br><br>NOVO NORDISK A/S and NOVO NORDISK, INC.,<br>                Defendant(s). | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:26-cv-03692 |

## SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff named below, by and through the undersigned counsel, files this *Short-Form Complaint and Demand for Jury Trial* against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, and any subsequent amended versions of such *Master Complaint*, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this *Short-Form Complaint* as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

1

**IDENTIFICATION OF PARTIES**

**Plaintiff(s)**

1.      Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s):      Robert Alexander Wilkie      .

2.      If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim:      N/A      , as _____ of the estate of _____ , deceased.

3.      If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s):      N/A      .

4.      If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services:      N/A      .


**Defendant(s)**

5.      Plaintiff(s)/Decedent's Representative is/are suing the following Defendant(s) (check all that apply):

         X   Novo Nordisk Inc.

         X   Novo Nordisk A/S

         _____ Eli Lilly and Company

         _____ Lilly USA, LLC

         _____ other(s) (identify): _____

2

**JURISDICTION AND VENUE**

6.    City and state of Plaintiff's current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence):

Plaintiff is a citizen of the United States, a citizen of the State of Washington, and a resident of the city of Federal Way, Washington.

7.    State where Plaintiff was prescribed the GLP-1RA Product(s) at issue:

Plaintiff's physician(s) prescribed Ozempic that was used by Plaintiff in Washington.

8.    State of Plaintiff's residence at time of his use of the GLP-1RA Product(s) at issue:

Plaintiff was a citizen of the State of Washington at the time of his GLP-1 RA use.

9.    City and state of Plaintiff's residence at time of diagnosis of injury:

Plaintiff resided in Federal Way, Washington at the time of his diagnosis of his injur(ies).

10.    Jurisdiction is based on:

   _X_    diversity of citizenship pursuant to 28 U.S.C. § 1332

   _____    other (plead in sufficient detail as required by applicable rules):

   _____

   _____

11.    The District Court(s) where Plaintiff(s) might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

United States District Court for the Western District of Washington

12.    Venue is proper in the District Court identified in Paragraph 11 because:

    __X__    a substantial part of the events and omissions giving rise to Plaintiff(s)'

claims occurred there

    _____    other (plead in sufficient detail as required by applicable rules):

_____

13.    If applicable, identify the citizenship of any additional Defendant(s) named above:

N/A_____

## **PRODUCT USE**

14.    Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):

    __X__    Ozempic (semaglutide)

    _____    Wegovy (semaglutide)

    _____    Rybelsus (oral semaglutide)

    _____    Victoza (liraglutide)

    _____    Saxenda (liraglutide)

    _____    Trulicity (dulaglutide)

    _____    Mounjaro (tirzepatide)

    _____    Zepbound (tirzepatide)

    _____    Other(s) (specify): _____

15.    To the best of Plaintiff's knowledge, Plaintiff used GLP-1 RA Product(s) during the following approximate date range(s) (month(s) and year(s)) (if multiple products, specify date range(s) for each product):

Plaintiff used Ozempic from in or about March 2023 through in or about June 2023.

4

.    **INJURIES AND DAMAGES**

16.    To the best of Plaintiff(s)' knowledge, as a result of using GLP-1 RA Product(s), Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

   __X__ Gastroparesis

   __X__ Other gastro-intestinal injuries (specify):

      Abdominal pain; Intractable nausea and vomiting; Impaired and/or delayed gastric emptying with symptoms

   _____ Ileus

   _____ Ischemic Bowel/Ischemic Colitis

   _____ Intestinal Obstruction

   _____ Necrotizing Pancreatitis

   _____ Gallbladder Injury (specify): _____

   _____ Micronutrient Deficiency

   _____ Wernicke's encephalopathy

   _____ Aspiration

   _____ Death

   _____ Additional/Other(s) (specify): Dehydration; Acute kidney injury

17.    Plaintiff's injuries occurred in approximately (month and year)?

Plaintiff began suffering with intractable nausea and vomiting and worsened abdominal pain after beginning use of Ozempic in or about March 2023. Plaintiff was diagnosed with dehydration and acute kidney injury thereafter. In May 2023,

an EGD was performed indicating a gastroparesis diagnosis. Plaintiff suffered with impaired and/or delayed gastric emptying with symptoms.

18.    In addition, as a result of Plaintiff's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

   X   Injury to self

\_\_\_\_\_ Injury to person represented

   X   Economic loss

\_\_\_\_\_ Wrongful death

\_\_\_\_\_ Survivorship

\_\_\_\_\_ Loss of services

\_\_\_\_\_ Loss of consortium

\_\_\_\_\_ other(s) (specify): _____

## CAUSES OF ACTION

19.    In addition to adopting and incorporating by reference the *Master Complaint* as stated above, more specifically, Plaintiff hereby adopts and incorporates by reference the following Causes of Action and allegations asserted in the *Master Complaint* (check all that apply):

\_\_\_\_\_ Count I:    Failure to Warn – Negligence

\_\_\_\_\_ Count II:    Failure to Warn – Strict Liability

  X  Count III:    Breach of Express Warranty/Failure to Conform to Representations –

  X  Count IV:    Breach of Implied Warranty –

  X  Count V:    Fraudulent Concealment/Fraud by Omission
*See* Exhibit A.

6

  X   Count VI:   Fraudulent/Intentional Misrepresentation
*See* Exhibit A.

_____ Count VII:  Negligent Misrepresentation/Marketing

_____ Count VIII: Strict Product Liability Misrepresentation/Marketing

_____ Count IX:   Innocent Misrepresentation/Marketing

_____ Count X:    Unfair Trade Practices/Consumer Protection

_____ Count XI:   Negligence

_____ Count XII:  Negligent Undertaking

  X   Count XIII: State Product Liability Act ("WPLA") (see below)

_____ Count XIV: Wrongful Death

_____ Count XV:  Loss of Consortium

_____ Count XVI: Survival Action

_____ Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules):

_____

20.    If Plaintiff is asserting a claim pursuant to the unfair trade practices or consumer protection statutes of any jurisdiction as identified in Count X above:*

    a.  Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims:

_____

_____

    b.  Identify the factual allegations supporting those claims (by subsection, if applicable):

_____

_____

*Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21.    If Plaintiff is asserting a claim pursuant to the Product Liability Act ("PLA") of any jurisdiction as identified in Count XIII above:*

    a.    Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims:

The Washington Products Liability Act ("WPLA") is codified within the Revised Code of Washington (RCW), § 7.72, *et seq.* with Plaintiff more particularly bringing claims under §§ 7.72.010 - Definitions; 7.72.020 – Scope, 7.72.030 – Liability of manufacturer; and 7.72.040 – Liability of product seller other than manufacturer – Exception.

    b.    Identify the legal theories identified in Paragraph 19 above (*e.g.*, negligent failure to warn, fraud, etc.) that are subsumed within Plaintiff's PLA claim:

Count I: Failure to Warn - Negligence; Count III: Breach of Express Warranty/ Failure to Conform to Representations; Count IV: Breach of Implied Warranty; Count VII: Negligent Misrepresentation/Marketing; Count VIII: Strict Liability Misrepresentation/ Marketing; Count XI: Negligence; Count XII: Negligent Undertaking. Count III: Breach of Express Warranty and Count IV: Breach of Implied Warranty are addressed under RCW 62A.2.

    c.    Identify the factual allegations supporting those claims:

Defendants as both sellers and manufacturers of the GLP-1 RA Product(s) produced defective Product(s) that were unsafe and known to be unsafe to the ordinary consumer, and which Defendants knew could have been designed to

be safer, and that would cause injury as produced and sold. Defendants also failed to provide adequate warnings or information with regard to their products and misled consumers, including Plaintiff, as well as consumers' physicians regarding the safety and risks associated with use of their GLP-1 RA Product(s) by overstating benefits and understating risks from using the Product(s). Plaintiff was exposed to advertisements regarding the weight loss advantages of Ozempic which omitted and/or downplayed the risks of using the medication. Instead, the ads made statements of "no increased risk." Plaintiff discontinued his Ozempic use after suffering from gastrointestinal difficulties including abdominal pain, intractable nausea and vomiting, gastroparesis and impaired and/or delayed gastric emptying as well as dehydration and acute kidney injury.

In addition, Plaintiff incorporates the following paragraphs from the *Master Complaint* (ECF 481) by reference:

Count I:    Failure to Warn – Negligence (paragraphs 606-640)

Count II:   Failure to Warn – Strict Liability (paragraphs 641-674)

Count III:  Breach of Express Warranty/Failure to Confirm to Representations (paragraphs 675-698)

Count IV:  Breach of Implied Warranty (paragraphs 699-720)

Count V:   Fraudulent Concealment/Fraud by Omission (paragraphs 721-779)

Count VI:  Fraudulent/Intentional Misrepresentation (paragraphs 780-800)

Count VII: Negligent Misrepresentation/Marketing (paragraphs 801-824)

Count VIII: Strict Product Liability Misrepresentation/Marketing (paragraphs 825-848)

Count IX:  Innocent Misrepresentation/Marketing (paragraph 849)

Count X:   Unfair Trade Practices/Consumer Protection (paragraphs 850-865)

(see below)

Count XI:  Negligence (paragraphs 866-880)

Count XII – Negligent Undertaking (paragraphs 881-903)

Count XIII: - State Product Liability Acts (paragraphs 904-911)


See also the Factual Allegations Section of the *Master Complaint.* Plaintiff

incorporates Exhibit "A" to Plaintiff's Short Form Complaint as to Fraudulent

Concealment and Fraudulent/Intentional Misrepresentation.

*\* Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22.     If pre-suit notice is required by statute, did Plaintiff provide some form of

separate pre-suit notice to Defendant(s)?  If so, attach such notice.

To the extent that any pre-suit notice was required, Plaintiff has complied or substantially

complied with all applicable notice requirements or is otherwise excused from compliance

for this proceeding. Defendants had notice of their violations for years including lawsuits

dating back to 2023. In response, Defendants refused to acknowledge and cure the

violations alleged herein in a manner that would compensate Plaintiff for the losses

Plaintiff has suffered as a result of the misconduct alleged herein. Therefore, any additional

notice would be futile.

## RELIEF

Plaintiff prays for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the *Master Complaint*, as appropriate, and any additional relief to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.


Date:   May 29, 2026                           By:   _____

                                                     Kristie M. Hightower (LA Bar #31782)
                                                     Lundy LLP
                                                     501 Broad Street
                                                     Lake Charles, LA 70601
                                                     khightower@lundyllp.com
                                                     T: (337) 439-0707 | F: (337) 439-0707

                                                     *Counsel for Plaintiff*

11

# EXHIBIT A

**FRAUD SUPPLEMENT - COUNTS V & VI**

1.      Plaintiff incorporates by reference the factual allegations in the *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), as though set forth fully at length herein.

2.      Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Products used by Plaintiff.

3.      At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiffs and their prescribing physicians.

4.      Defendants knew or should have known their GLP-1 RA Products were unreasonably dangerous and had gastrointestinal adverse effects that were of a greater severity, intensity, frequency, and duration than represented.

5.      Defendants knew their representations regarding the drug's safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6.      Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiffs and their prescribing physicians to use and prescribe the GLP-1 RA Products.

**Count V: Fraudulent Concealment / Fraud by Omission**

7.      Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a.  Risk of Severe GI Injuries: Concealing the true risk of persistent and debilitating gastrointestinal conditions, severe vomiting, and nausea, and cholelithiasis and the need for gallbladder removal.

b.  Inadequate Gastric Emptying Tests: Concealing that representations of a "minor" gastric delay were based on inadequate testing (e.g., the acetaminophen absorption test, which only measures liquid emptying) and that Defendants knew or should have known this testing did not reflect the drug's true impact on solid food digestion.

c.  Misleading Clinical Trial Data: Concealing the fact that clinical trial participants were frequently treated with anti-emetic medications (anti-nausea drugs) to manage GI side effects, thereby skewing the data and making the "mild to moderate" side effect profile reported in marketing materials false and misleading.

d.  Misleading and/or Inadequate Data: Concealing the fact that if the use of Defendants' GLP-1 RA Product is discontinued, blood sugar levels will likely rise, and can even become higher than they were before starting the medication.

e.  "Bogus" Weight-Loss Claims (Rebound Effect): Concealing that patients are highly likely to regain the weight after discontinuing the drug, and that maintaining any weight loss requires lifelong, continuous use of the medication.

f.  "Bogus" Weight-Loss Claims (Muscle Loss): Concealing that a significant portion of the total weight lost is often lean muscle mass, not just fat, which

can lead to negative health outcomes.

8. As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages. Plaintiff justifiably relied on Defendants' misrepresentations and omissions. Plaintiff was ignorant of the facts related to Defendants' Product(s) and did not have an equal opportunity to discover them. If Plaintiff had known the information Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

9. As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages.

**Count VI: Fraudulent / Intentional Misrepresentation**

10. Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

    a. Defendants made representations in widespread direct-to-consumer advertising (including television commercials and product websites) that patients using a Novo Nordisk GLP-1 RA could "lose weight and keep it off." These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b. Defendants made misrepresentations to the public and to Plaintiff by airing the widespread "Oh, Oh, Oh, Ozempic" television commercial, which falsely created a misleading impression of the drug's safety profile. Specifically, the commercial represented a character saying, "No increased risk!" which was an incomplete and misleading statement of safety that tended to assure viewers the drug was completely safe. Furthermore, while the commercial mentioned common gastrointestinal (GI) side effects like nausea and vomiting, it intentionally minimized the risk by failing to clarify the severe, incessant, and debilitating nature of these symptoms. Defendants concealed and omitted all mention of serious adverse events they knew or should have known to be associated with Ozempic use. These omissions created a deceptive net impression intended to induce consumers to request the product. Defendants' follow-up television commercials continued the "Oh, Oh, Oh, Ozempic!" brand theme as well as stating "no increased risk."

c. Defendants made representations to Plaintiff's prescribing physicians through sales representatives, medical websites (like NovoMedlink), and other physician-directed marketing that the most common gastrointestinal side effects, such as nausea and vomiting, were "mild to moderate" in severity and "transient" or of "short duration." These representations were false and misleading as Defendants concealed that these side effects were often severe, debilitating, and persistent, and that clinical trial data was skewed by the undisclosed use of anti-emetic medications.

11. Upon information and belief, Plaintiff's prescribing physician justifiably relied on

Defendants' misrepresentations to the medical community, including the false claims that gastrointestinal side effects were merely "mild to moderate" and "transient." In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising, which falsely represented that the drug would help patients both treat diabetes and "lose weight and keep it off." Relying on this false and misleading net impression that Ozempic was a safe, effective, and long-term solution for diabetes and weight management with only minor and temporary side effects, Plaintiff's physician was induced to prescribe the drug, and Plaintiff was induced to take them.

12.    Had Defendants disclosed the true risks of gastrointestinal injuries, the inadequacy of their safety testing, and the true, qualified nature of the long-term diabetes treatment and/or weight loss benefits, Plaintiff would not have used the product, and/or Plaintiff's prescribing physician would not have prescribed it.

13.    As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for medical treatment, and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.